LJF:WDS
F.#2010R01163

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

HASAN KARAKAS
          Defendant.

- - - - - - - - - - - - - - - - -X

10-827M

AFFIDAVIT AND COMPLAINT
IN SUPPORT OF
ARREST WARRANT

(T. 18, U.S.C., § 1344)

EASTERN DISTRICT OF NEW YORK, SS:

      ERIC E. ORAM, being duly sworn, deposes and states that he is a Postal Inspector with the United States Postal Inspection Service, duly appointed according to law and acting as such.

      Upon information and belief, in or about and between April 2010 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HASAN KARAKAS, together with others, did knowingly and intentionally execute a scheme and artifice to defraud one or more financial institutions and to obtain moneys, funds and assets under the custody and control of one or more financial institutions by means of materially false and fraudulent pretenses, representations and promises.

      (Title 18, United States Code, Section 1344)

The source of your affiant's information and the grounds for his belief are as follows:

1. I am a Postal Inspector with the United States Postal Inspection Service, and I have been personally involved in the investigation of this matter. I have been a Postal Inspector since August 2007. Prior to becoming a Postal Inspector, I worked for six years as an investigator with a private insurance company and a computer forensics firm. My investigations with those companies included theft of intellectual property, employment disputes and insurance fraud. As a Postal Inspector, I received 12 weeks of Basic Inspector Training, which included instruction in the investigation of assault, robbery, mail theft, and mail fraud. I am currently serving on the Nassau/Queens multifunctional team, which focuses on external crimes involving mail theft, identity fraud, bank fraud, mail fraud and wire fraud.

2. This affidavit is based upon my personal knowledge and observations, my review of records, including numerous financial records, my review of photographs and surveillance footage, and on my conversations with other law enforcement agents and witnesses. Because the purpose of this complaint is merely to establish probable cause to arrest, I have not set forth all of the facts and

circumstances concerning this investigation of which I am aware. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## BACKGROUND

3. A credit card or bank "bust-out" scheme is a form of fraud in which individuals fraudulently obtain multiple credit cards and bank loans and manipulate the credit lines to access cash and to purchase merchandise and services with no intent to pay back the lenders. Such a "bust out" scheme may be accomplished in a number of different ways. Individuals involved in such schemes typically create false documents, such as tax forms and pay stubs, and utilize them when obtaining these lines of credit.

4. To increase the credit line associated with a credit card, individuals involved in credit card bust-out schemes engage in check-kiting. Specifically, the individuals make payments on their credit card accounts with checks that later are returned for insufficient funds. Typically, the credit card companies will immediately credit those checks to the individual's account -- thereby decreasing the outstanding balance and increasing the limits

of the credit cards -- before the banks return the payment based on insufficient funds. During the brief period of time between which the bank receives the payments and is notified that the payments are being returned based on insufficient funds, the individual withdraws large amounts of cash and/or make many purchases using the credit cards.

5. Individuals involved in credit card or bank bust-out schemes also often establish shell companies to serve a number of fraudulent purposes, including establishing credit card processing terminals and conducting fraudulent transactions with no intent to pay back the credit lenders.

6. Bust-out schemes result in a process called a "charge-off," which forces a bank to absorb the outstanding account balance as a loss.

INVESTIGATION

7. This investigation has revealed that in or about and between May 2004 and April 2010, the defendant HASAN KARAKAS applied for and obtained five credit cards from Chase Bank USA, NA ("Chase").

8. Chase mailed the credit cards to KARAKAS at two different addresses in Sunnyside, New York. KARAKAS used the Chase credit cards sporadically until April 2010. Then, on or about and between April 4, 2010 and May 11,

2010, KARAKAS made numerous purchases at various stores in Manhattan, Queens and Nassau County using the Chase credit cards. For instance, Postal Inspectors obtained receipts and copies of a Delaware driver's license from a store in Manhattan called Exclusive Time. The Delaware driver's license is that of HASAN KARAKAS. KARAKAS used the Chase credit cards to purchase $6,000.00 of a total purchase of $14,000.00 at Exclusive Time on May 8, 2010.

9. Between May 7, 2010 and May 8, 2010 -- the same period of time during which purchases were being made with KARAKAS's Chase credit cards -- Chase received approximately seven payments, totaling approximately $15,449.65, from KARAKAS's Sovereign Bank ("Sovereign") checking account as payments on his credit card accounts. All seven payments were returned for insufficient funds. Chase has sustained a loss of approximately $17,457.48 based on the credit cards issued to KARAKAS.

10. Postal Inspectors have obtained surveillance footage from Chase, which reveals that during May 2010, KARAKAS and others conducted transactions, primarily payments, at various Chase branches in Queens in connection with KARAKAS's Chase credit card accounts. The footage reveals that on or about May 7 and May 8, 2010, KARAKAS made payments at two Chase branches in Queens on those days for a

total of approximately $14,399.65, which were all later returned for insufficient funds.

11. Postal Inspectors, including myself, compared the surveillance footage of the male individual seen making multiple payments on KARAKAS's Chase accounts between May 7 and May 8, 2010 to a copy of a Delaware Department of Motor Vehicles photograph of "Hasan Karakas." The individual in the footage was also compared to immigration photos of KARAKAS obtained from the Department of Homeland Security. Based on these comparisons, we have determined that the individual in the Chase surveillance footage is KARAKAS.

12. The investigation has further revealed that on or about April 19, 2010, KARAKAS opened a checking account at a Sovereign branch. Bank records indicate that this account was used to make payments to other financial institutions, including Chase. An investigator at Sovereign stated that the account was opened on April 19, 2010 with a deposit of $100.00. The account was closed on May 10, 2010. The account never had a balance of more than $100.00.

13. Through the checks provided by Sovereign, as well as information provided by other fraud investigators at various financial institutions, the Postal Inspection Service has discovered additional losses, totaling over $50,000.00, to other financial institutions where KARAKAS

obtained credit cards and/or bank loans. The losses all involve payments returned for insufficient funds in or about the "bust-out" period in May 2010.

WHEREFORE, your deponent respectfully requests that an arrest warrant issue for the defendant HASAN KARAKAS so that he may be dealt with according to law.

_____
Eric E. Oram
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me this
20th day of July, 2010

_____
HONORABLE MICHAEL L. ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK